In the United States District Court
For the Eastern District of North Carolina
Northern Division

No. 2:20-CV-30-BO

| | |
|---|---|
| **JENNIFER KING**<br>**Plaintiff,**<br><br>v.<br><br>**U.S. FISH AND WILDLIFE SERVICE,**<br>**Defendant.** | **COMPLAINT FOR:**<br>1) Quiet Title<br>2) Resolution of Boundary Dispute; decree establishing accurate measurements of quantity of real interests for all involved interest holders: number of acres and boundary lines<br>3) Declaration to rights |

1. Plaintiff Jennifer is, and at all times mentioned in this complaint was, a resident of 3073 Huntington Dr., Spartanburg, SC 29302.

2. Defendant is, and at all times mentioned in this complaint was, an agency of the U.S. Federal Government within the U.S. Department of the Interior dedicated to the management of fish, wildlife, and natural habitats.

3. Jurisdiction in this court is based on real property located in Tyrrell County, North Carolina.

### The acts complained of in this suit concern:

4. Plaintiff is the owner of a one-third undivided interest of a reservation made by B. J. Baldwin of a one-fourth undivided interest in and to gas, oil, and other minerals, as set out by the instrument dated March 15, 1968, and recorded in Book 123, Page 281 of the Tyrrell County

Registry [Exhibit A]. Plaintiff, along with her surviving siblings, collectively own 100% of this one-fourth undivided interest. The instrument, [Exhibit A], contains a legal description of the property, which describes the mineral interest as being comprised of two tracts, each measuring 4,056 acres, one of said tracts being Registered Estate No. 294 and the other of said tracts being Registered Estate 296, attached hereto as [Exhibits B and C] attached this complaint. The numbers 294 and 296 are the current Registered Estate numbers; the Registered Estate numbers for this particular tract of land have changed over time, as this particular tract has been conveyed several times. Plaintiff's mineral interest appears as a reservation in all conveyances of the lands contained in these two registered estates subsequent to March 15, 1968, this date being the date of execution of the instrument providing for the mineral interest in and to the 8,112 acre tract.

5. In October 2018, Plaintiff submitted a request pursuant to the Freedom of Information Act (FOIA) demanding that the Defendant release information regarding this tract, as well as the formal legal opinions which have been issued. Plaintiff submits the following three documents were obtained under this FOIA request:

- [Exhibit D] – dated August 1st, 2000
- [Exhibit E] – dated September 2nd, 2016
- [Exhibit F] – dated October 22nd, 2018

[Exhibits D, E and F] summarize the comprehensive chains of title for the tracts that comprise the original 12,112 acre tract. [Exhibit K] is attached hereto, which is an official survey that provides a visual depiction of the 8,112 acres found in [Exhibits B and C].
Also attached is [Exhibit G-1] which is a survey showing the Westernmost 3,000 acres of the original 12,112 acre tract; [Exhibit G-2] is also attached and is the same survey as [Exhibit G-1],

but with the addition of *Western Road* which is a road that crosses through the Westernmost portion of the original 12,112 acre tract.

6. Plaintiff contends the rights provided by [Exhibit A], as well as [Exhibits B and C], as well as the reservation listed in each conveyance of this tract, are in and to a mineral interest which lies beneath 8,112 acres of surface land, ergo, Plaintiff's mineral interest is a percentage of 8,112 acres [one-third of the undivided 25% mineral interest in an to 8,112 acres]. Plaintiff acknowledges said surface land is owned by Defendant and does not contest Defendant's ownership of 8,112 acres of surface land.

7. Defendant contends [Exhibits B and C] provide title for 9,112 acres, due to a particular reference in the metes-and-bounds legal description appearing in these instruments. The 1,000 acre tract (which adjoins the 8,112 acre tract along the Western boundary) is the land which is being disputed.

8. Ultimately, 11,112 acres of the original 12,112 acre estate were conveyed and now belong to Defendant, and there is a traceable chain of title. Defendant makes reference to the legal description of [Exhibits B and C] (the 8,112 acre tract), which describes the Western boundary of the 8,112 acre tract as adjoining to the "J. M. Robinson land" and running thence with the Eastern boundary of the J. M. Robinson property.

**The reference to the J. M. Robinson line within these two instruments is inaccurate, as neither Plaintiff nor Defendant are able to find record of J. M. Robinson ever having title to the 1,000 acres immediately to the west of the 8,112 acre tract.**

9. As mentioned in [Exhibit E], J. M. Robinson did, for a brief period of time, own the Westernmost 3,000 acres of the original 12,112 acre tract. Defendant asserts that this reference to the J. M. Robinson tract in the metes and bounds to the 8,112 acre legal description provides title for 9,112 acres instead of 8,112 acres, and contends that the reference to "J. M. Robinson land" as being the adjoining lands to the Western boundary to the 8,112 acre tract, has priority relative to the calls to course and distance, **being that the J. M. Robinson line, in Defendant's words, is the "established monument."** An email from John Doney, Attorney-Advisor with the U.S. DOI, succinctly summarizes this assertion and is attached hereto as [Exhibit I].

10. Defendant contends, whether in error or not, the established property line of the J. M. Robinson tract used as a reference point in the legal description for [Exhibits B and C] provides Defendant with title to additional 1,000 acres not conveyed through [Exhibits B and C]. From the map shown in [Exhibit G-1 & G-2], Defendant is claiming the Western boundary of [Exhibits B and C] is the same as the line which divides 3,000 acres from the other 9,112 acres.

11. Plaintiff asserts, the legal description within [Exhibits B and C] (as well as virtually every instrument describing these lands) both utilize the specific language containing: "...*the intersection of the Northwest Fork and Southwest Fork of Alligator River*..." as a reference point; this reference point being more permanent in nature than reference to the "J. M. Robinson land" as a point of reference.

Plaintiff further asserts, using the intersection of NW and SW Forks of Alligator river as an indisputable monument and reference in the metes and bounds, that [Exhibits B and C], combined, only contain 8,112 acres.

12. Plaintiff acknowledges multiple conveyances of aforementioned 8,112 acre tract between 1941 and 1990. Plaintiff calls into the question the validity of Defendant's 9,112 acre assertion, since none of the parties involved in the conveyances spanning 49 years ever mentioned such a discrepancy that would be consistent with Defendant's assertion. In other words, the parties involved in the multiple conveyances over the years never asserted the rights provided by [Exhibits B and C] provide for 9,112 acres. Each conveyance provides rights for an 8,112 acre tract, until a point in time when Defendant acquired said lands, at which point Defendant asserts these registered estates provide title to 9,112 acres.

13. In 1955, there was a Tyrrell County Superior Court decree, attached hereto as [Exhibit J], which ordered the issuance of new certificates of title to W. G. Fields, noting the corners of the 8,112 acre property have been measured and duly noted. A result of this decree is a specified delineation and description of the boundaries, having been duly measured and noted, describing the Western 3,000 acre tract and the Eastern 8,112 acre tract, both of said tracts being part of the original 12,112 acre tract as described in Registered Estate 7 from (Torrens Book 1, Page 32) being the same 12,112 acre tract as discussed above.

14. In Deedbook 96, Page 494, the legal description specifies: "……in Deed Book 94 Page 87, containing 12,112 acres, excepting, however, the 4,000 acres on the Western end thereof which has heretofore been conveyed by said Meekins to T. D. Harris." This, among other relevant facts, provides a specific <u>delineation between the Easternmost 8,112 acres and the Westernmost 4,000 acres of the original 12,112 acre tract</u>.

15. All of the legal descriptions mentioned in preceding paragraphs in this document describe the boundaries of the 8,112 acre tract from "right to left" (East to West), with the beginning point at

the intersection of NW and SW forks of Alligator River. More importantly, however, there were some conveyances in which the legal description for the 8,112 acre tract goes from "left to right" (West to East). For example, the conveyance in Book 102 Page 168 describes the 8,112 acre tract as the following:

"Beginning at a point 14,584 feet Eastwardly from the East line of the lands of the John L. Roper Lumber Co., thence South 89 degrees East to the Northwest fork of Alligator River; thence Southwardly along said Fork and along the lands formerly belonging to S. A. Morris and S. A. Newton to the Northeast corner of a tract of land which was conveyed to T. D. Harris by T. S. Meekins on the 13th day of March, 1943; thence Northwardly along the line of the said Harris tract to the point of beginning, containing 8,112 acres, more or less, and being the eastern portion of one of the tracts of land which was conveyed to T. S. Meekins by Richmond Cedar Works and State Plants Bank & Trust Company on July 21, 1941."

As previously mentioned, Defendant asserts that the legal description for the 8,112 acre tract (which moves from "right to left") describes the Western boundary of [Exhibits B and C] as running along the J. M. Robinson line. The legal description in the preceding paragraph begins along the Western boundary of [Exhibits B and C] and moves "left to right" and once again, describes 8,112 acres. This challenges the Defendant's assertion since the point of beginning, as described in the preceding paragraph, specifies the Western boundary of [Exhibits B and C] at a point which is different from the lands of J. M. Robinson.

The point of beginning in this legal description begins on the Western boundary of the 8,112 acres, and the point of beginning is located 14,584 feet East of the John L. Roper tract, and the 14,584 feet distance between these two tracts is comprised of the Westernmost 4,000 acres of the

original 12,112 acre tract, further delineating the 8,112 acre tract from the lands west of it. 14,582 divided by 4 = 3,646 feet, which is the length of the Southern boundary of each 1,000 acre tract, of which there are four, to the West of the 8,112 acre tract.

16. Plaintiff has considered Defendant's assertion, and concludes Defendant has offered no evidence to support their claim other than the reference to the J. M. Robinson land as being the Western boundary of [Exhibits B and C].

17. In November of 1965, John F. and Louise Moore conveyed the 1,000 acres in question to Stanley Goedell through two Special Warranty Deeds, each containing 500 acres. There is no record detailing Mr. and Mrs. Moore as grantees to this tract. Tyrrell County Tax Assessor shows record of tenants having paid taxes on these lands for several years, as well as several years of unpaid taxes, which eventually led to the County's foreclosure upon these lands, one of the 500-acre tracts in 1991 and one of the 500-acre tracts in 1995. The County acquired title in good faith and used foreclosure protocol.

18. Plaintiff has been in possession of the real property described in paragraph 3 of this complaint by virtue of will, said property having formerly belong to Plaintiff's parents, said will being on file in the counties where Plaintiff's parents became deceased, by Plaintiff's mother, and recorded in the Laurens County Registry in South Carolina.

19. Plaintiff has not been assessed any taxes or assessments against the real property described in paragraph 3 of this complaint during the 5-year period, as Plaintiff's interest is not taxable.

20. Defendant claims an estate or interest in the real property described in paragraph 4 that creates ambiguity in and to Plaintiff's interest.

21. Defendant's claim prevents Plaintiff from accurately marketing her interest and exposes Plaintiff to risk of material exaggeration, misstatement, and/or potential loss due to ambiguity in quantifying and valuing Plaintiff's property described in [Exhibits B and C].

## **Plaintiff seeks the following relief:**

1. For judgment that Defendant has a right, title, estate, or interest in or lien on property totaling 8,112 acres, and only 8,112 acres, as detailed in the legal description of [Exhibits B and C] of the Tyrrell County Registry;

2. For relief of ambiguity of the interests, both surface and subsurface, contained in [Exhibits B and C] of the Tyrrell County Registry;

3. To update [Exhibits B and C] with corrected legal description so as to eliminate any question or doubt as to the location of the boundary lines

4. To summarize the rights of the interest holders in [Exhibits B and C] so as to remove any doubt regarding the amounts of acreage provided by these rights.

5. For other and further relief that the Court deems just and prompt.

SIGNATURE: *Jennifer King*

Jennifer King

DATE: 5/27/20

## VERIFICATION

I, Jennifer King, am the Plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at 3073 Huntington Dr., Spartanburg, SC 29302.

SIGNATURE: *Jennifer King*

**Jennifer King**

DATE: 5/27/20

CERTIFICATE OF SERVICE:

I certify that I have served a copy of Complaint for: Quiet Title, Resolution of Boundary Dispute, and Declaration to Rights on May 27th, 2020 by mail, return receipt requested on the following:

Jennifer King

*(signature)*

Jennifer King

3073 Huntington Dr.

Spartanburg, SC 29302

(864) 590-6462

5/27/20

May 27th, 2020